ACCEPTED
01-14-01010-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/29/2015 12:00:00 AM
CHRISTOPHER PRINE
CLERK

No. 01-14-01010-CR

IN THE

COURT OF APPEALS

FOR THE

FIRST DISTRICT OF TEXAS

AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/29/2015 8:00:00 AM

CHRISTOPHER A. PRINE
Clerk

_____

MARCUS D. JACKSON
Appellant

VS.

THE STATE OF TEXAS
Appellee

_____

APPELLANT'S BRIEF

_____

On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1420051

_____

Kyle B. Johnson
SBN: 10763570
917 Franklin, Suite 320
Houston, Texas 77002
Tel: (713) 223-4100
Fax: (713) 224-2889

ATTORNEY FOR
MARCUS D. JACKSON

# TABLE OF CONTENTS

INDEX OF AUTHORITIES          iv

INTERESTED PARTIES   v

STATEMENT REGARDING ORAL ARGUMENT      vi

CITATIONS TO THE RECORD   vi

STATEMENT OF THE CASE      2

SOLE ISSUE PRESENTED          3

      WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE APPELLANT'S CONVICTION FOR POSSESSION OF PCP IN AN AMOUNT OF ONE TO FOUR GRAMS? 3

STATEMENT OF FACTS  3

    Pre-trial Hearing (10/24/14)          3

    Pre-trial Hearing (11/3/14)  4

    Pre-trial Hearing (12/1/14) 6

    The Trial       7

        Preliminary Matters 7

        Voir Dire       10

        Preliminary Matters 12

        Opening Statements 13

        State's Case   13

        The Defense's Case  22

        Motion for Instructed Verdict       22

        The Jury Charge     22

        Closing Arguments  22

        The Verdict   23

        Sentencing   24

SOLE ISSUE PRESENTED (restated)   27

SUMMARY OF THE ARGUMENT     27

ARGUMENT       27

CONCLUSION     29

PRAYER    29

CERTIFICATE OF COMPLIANCE     30

CERTIFICATE OF SERVICE     30

# INDEX OF AUTHORITIES

Cases

*Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality op .)     27

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)     27

Rules/Statutes

## INTERESTED PARTIES

Judge:               The Honorable Mike Wilkinson
The Honorable J. A. Burnett
The Honorable Lee Duggan, Jr.
The Honorable Leslie Brock Yates
The Honorable A. Reagan Clark
Presiding Judges, 337th District Court, Harris County, TX
1201 Franklin
Houston, TX 77002

Prosecutors:      Mr. Joseph Sanchez (trial)
Ms. Alycia Harvey
Ms. Lauren Bard
Assistant District Attorneys
Harris County District Attorney's Office
1201 Franklin
Houston, TX 77002

Mr. Alan Curry (appeal)
Assistant District Attorney
Harris County District Attorney's Office, Appellate
1201 Franklin, 6th Floor
Houston, TX 77098

Pro Se Defendant     Mr. Marcus D. Jackson (trial)

Defense Attorneys:   Mr. Kyle B. Johnson (appeal)
917 Franklin, Suite 320
Houston, TX 77002

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is waived.

## CITATIONS TO THE RECORD

The Record consists of a one-volume clerk's record which will be as cited "CR" followed by the document "Bates Stamp" number (e.g. "CR - 003") and eight volumes of Court Reporter's Records which will be cited by volume number followed by the page number (e.g. "Vol. 4 - p. 26").

No. 01-01-01010-CR

IN THE

COURT OF APPEALS

FOR THE

FIRST DISTRICT OF TEXAS

AT HOUSTON

_____

MARCUS D. JACKSON
Appellant

VS.

THE STATE OF TEXAS
Appellee

_____

APPELLANT'S BRIEF

_____

On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1420051

_____

TO THE HONORABLE JUSTICES OF THE FIRST COURT OF APPEALS:

NOW COMES Marcus D. Jackson, the appellant herein, by and through his counsel appointed on appeal, Kyle B. Johnson, and files this his Appellant's Brief and respectfully shows the Court the following:

STATEMENT OF THE CASE

The appellant was charged by indictment with the offense of Possession of a Controlled Substance (PCP 1-4 gms.) alleged to have occurred on March 4, 2014. The primary offense was enhanced by two prior felony convictions. (CR - 016). On September 5, 2014, a *Faretta* hearing was held and the appellant's request that he be allowed to represent himself was granted. [1] (CR - 124).

On December 8, 2014, the appellant appeared in court, plead "not guilty", and a four day jury trial commenced. (CR - 126-128).

The jury returned a verdict of "guilty" on December 10, 2014. The appellant was sentenced by the trial court judge to 35 years in the Institutional Division of the Texas Department of Criminal Justice on December 11, 2014. (CR - 128). [2]

The trial court filed a Certification of the Appellant's Right to Appeal on December 11, 2014 (CR - 108) and the appellant filed a notice of appeal the same day. (CR - 112). [3]

One Motion for Extension of Time to File Appellant's Brief has been granted. The current due date is July 3, 2015.

---

[1] The appellant's appointed attorney, Alex G. Azzo, was removed from the case but instructed to stand by in the event the appellant had any questions during trial.

[2] There is nothing in the record that the appellant made a formal punishment election so this may have represented the default procedure.

[3] The appellant filed a Motion for New Trial on December 11, 2014. (CR - 115). There does not appear to have been a hearing on the matter (or that one was requested) so it would have been deemed denied as a matter of law. Tex. R. App. P. 21.8(c).

<u>ISSUE PRESENTED</u>

WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE
APPELLANT'S CONVICTION FOR POSSESSION OF
PCP OF  IN AN AMOUNT OF ONE TO FOUR GRAMS?

<u>STATEMENT OF FACTS</u>
<u>Pre-trial Hearing (10/24/14)</u>
<u>(Judge Jay Burnett, presiding)</u>
On October 24, 2014, the appellant appeared in court (representing himself) and

certain preliminary matters were addressed.  The State presented the appellant with its

Disclosure of Experts, its Notice of Intention to use Evidence of Prior Convictions and a

Notice to use Photographs, Scene Diagrams, Maps and Other Graphic Materials (which it

said it would show the appellant on the day of trial.  The State also presented the

appellant with a copy of the Offense Report, the Lab Report and a copy of its subpoena

list (intended to serve as a witness list).  (Vol. 2 - pp. 5-6).

The appellant presented a motion to retest the controlled substance in the case,

asking the PCP be retested by Miriam Kane, a lab analyst for the Houston Forensic

Science Center. [4]  The motion was granted. [5]  (Vol. 2 - pp. 7-8).

<u>Pre-trial Hearing (11/3/14)</u>
(Judge Lee Duggan, Jr., presiding)

A second pre-trial hearing was held on November 3, 2014.  At this hearing, the

appellant complained that his request to have the PCP retested "hasn't went through yet,

which I don't know why."  The trial judge admonished the appellant that he really should

---

4 A review of the original lab report admitted as State's Exhibit No. 3 indicates that this is the same analyst that tested the PCP the first time.

5 However, there is nothing in the record to indicate that anything was done by the appellant to actually effectuate that order.

not be representing himself since it was clear that he really did not understand court procedures. The appellant responded "That is the path I chose to take, Your Honor." (Vol. 3 - pp. 4-8).

The trial court continued to warn the appellant about playing a game in which he does not know the rules and the appellant responded again "I'm exercising my right to represent myself." (Vol. 3 - pp. 8-10). The trial court continued saying, "You understand I would change it with your permission if you wanted it changed so that you could have a court appointed attorney." The appellant repeated "I do not want one at the time, no." (Vol. 3 - pp. 10-11).

The stand by counsel directed the trial court's attention to the fact that the purpose of this particular hearing was to address the appellant's request to have the PCP re-tested. Stand by counsel advised the court that, while an order to re-test had been entered, no one had been notified nor had arrangements been made to cover the costs since the appellant was pro se. The trial court admitted that he was not sure how these things actually got done and the prosecutor advised him that it was the responsibility of the appellant to take care of the details (making it clear, in the process that, it was not the State's motion so it was not the State's responsibility to see that the ordered was carried out). (Vol. 3 - pp. 11-12). [6]

_____

6 Normally a party seeking to have a substance re-tested would not only get an order agreeing to the re-test but the order would be directed to the party in control of the substance ordering that party to deliver the substance to a particular lab. The party also normally would have been in touch with the lab to ascertain what, if any, costs would be involved and the order would order Harris County to pay those costs. An order that simply says to retest a substance is only the beginning of what is a very arduous and complicated process. Frankly, no pro se defendant who is in custody with limited phone access is ever going to be able to get such an

The appellant then asked for a dismissal "due to the fact that the DA's are not efficient enough on their proper work so I can hurry up with a speedy trial." That motion was denied. (Vol. 3 - p. 12).

The appellant then advised the trial court that he had filed several motions. The judge noted that one of them was entitled "The State of Texas vs. Les Sovereignty". The trial court then asked the appellant about that name, to which the appellant responded "That's the name I'm claiming. That's the name I'm going under at this moment. I'm not – I'm the beneficiary of the name Marcus Jackson, all capital letters." The appellant went on to explain "I did not chose to go under. It was given to me at birth. So, being that it's signed on my birth certificate, in all capital letters, that mean my parents signed me over to the State, the date of my birth." (Vol. 3 - pp. 15-16). [7]

The trial court then made it clear he wanted the stand by attorney to remain as stand by and he asked counsel to make copies of the appellant's motions and give them to the state. (Vol. 3 - pp. 16-17).

The trial court then took up several of the appellant's motions. A motion for the appointment of an investigator was granted but the trial court made it clear that it would be up to the appellant to hire the investigator. The appellant then asked that his *Brady* motion be taken up. This motion actually was entitled "Discovery Motion-"Brady" Inconsistent Evidence". (CR - 057) It actually was filed the date of this hearing, November 3, 2014. (Vol. 3 - pp. 19-20).

_____
order carried out.

[7] The trial court advised the appellant that, until he changed his name legally, he was going to have to go by Marcus D. Jackson.

The prosecutor responded that it will turn over any and all *Brady* material that comes into its possession. I then stated that it had not had a chance to evaluate all of the points in the appellant's motion (which not only was a *Brady* Motion but also a fairly broad discovery request). The trial was reset until December 8, 2014 but it was agreed there would be a pre-trial setting on December 1, 2014 to allow any exchange of documents that needed to be made. (Vol. 3 - pp. 24-25).

Pre-trial Hearing (12/1/14)
(Judge Leslie Brock Yates, presiding)

At the outset of this hearing, the appellant advised the court that he did not want even stand by counsel. The trial court denied that request and advised the appellant that stand by counsel would be present in the event the appellant had any questions during the trial. The trial court then entered the standard Discovery Order (CR - 090) and ruled that, to the extent the appellant's Discovery/*Brady* Motion requested anything else, the motion was denied. (Vol. 4 - pp. 4-5). [8]

The appellant then asked for a Personal Recognizance Bond so that he could prepare his case for trial on the outside. That request was denied given the fact that it was alleged that the appellant had two prior felony convictions and was facing a possible 25 to life sentence. (Vol. 4 - p. 7).

---

[8] A review of the appellant's "Discovery Motion-Brady" Inconsistent Evidence" reveals a very lengthy document requesting a very broad array of items, many of which, frankly, either do not apply to this case or fall outside the limited discovery provided for by Tex. Code Crim. Proc. Ann. art. 39.14. The trial court tried to get the appellant to narrow down his request to things he specifically wanted and his response was that he wanted the "whole body" of the motion to be granted. (Vol. 4 - pp. 6-7). Frankly, there is nothing in the trial record to indicate the standard discovery order entered was not sufficient.

12

## The Trial
### (Judge A. Reagan Clark)

### Preliminary Matters

Prior to voir dire, a few pre-trial matters were discussed.  The first was the issue of how the trial court should address the appellant since he did not want to be called by his legal name (and, in fact, said he would not answer to that name).  It was agreed he would be addressed simply as "Defendant".  (Vol. 5 - p. 4).

Next the matter of the appellant's stand by counsel was taken up.  The appellant did not want a stand by counsel but the trial court refused to release him completely.  It was agreed that the appellant's stand by counsel would not sit at the counsel table with the appellant but would be in the court room in the event he was needed.  (Vol. 5 - pp. 4-5).

The appellant then complained that his "Brady Motion" had not been ruled upon. (Vol. 5 - pp. 7-8). (In fact, as discussed above, the trial court dealing with that matter basically entered a standard discovery order and ruled that any requests not covered by that order were denied.)

It was determined that the appellant could look through the State's file while the jury was coming.  (Vol. 5 - p. 9).

The trial court then asked the appellant who he was going to for punishment.  The appellant responded that he had not yet decided.  He also asked that, if possible, all the different judges who had set in his case be there.  That request was denied.  (Vol. 5 - pp 9-10).

The appellant then stated that his forensics tests had not yet come back yet. The appellant said that he had written the lab but had not heard from them. The prosecutor responded that he was not aware that any retesting had been done but that it had been made clear to the appellant on numerous occasions that, if he was going to represent himself, that it was incumbent upon him to make the necessary arrangements for any retesting.

The appellant responded that he had sent the order to a lab but had not heard anything. He added that he had asked his stand by counsel to handle it but was told it was "not his doing". The appellant stated that he had requested a PR bond so he could get out and handle things like this. Ultimately, he had no proof of any efforts he had made to have the substance retested other than the date he sent the order to a lab. (Vol. 5 - pp 11-18).

The trial court then told the appellant (after reviewing the file and seeing the order of Judge Burnett allowing the PCP to be retested) that the prosecutor would contact the lab, have them retest the PCP and the results would be ready before the State put on its chemist. (Vol. 5 - pp 18-19). [9]

The appellant then stated

At this time I would like the record to show and reflect that I am stating again my sovereignty, and with that, Your Honor, I come again asking you to please - - would you at least accept my offer of the Brady motion? Because as I stated before, it is a very key part of my defense.

The trial court responded that all discovery matters had been ruled upon. The prosecutor

_____

9 The appellant's request was that the same lab that did the original testing (actually, he specifically asked for the same chemist) do another test.

added that it had complied with its duty under *Brady* and had turned over any exculpatory materials which it had.

The appellant then told the court that what he really wanted was information on his past convictions so he could file writs. (Presumably, what he wanted to do was attack the convictions that were being used as enhancements.) The State responded that, any post conviction writ discovery would not be part of this case and the appellant would have to go through a Public Information Act request like any other attorney. The trial court agreed and overruled the appellant's request. The appellant responded "Let the record reflect that the Judge has denied my Brady motion." (Vol. 5 - pp 19-25).

<u>Voir Dire</u>

During its introduction, the trial court explained to the panel that the appellant was representing himself by choice. He also explained that the attorney sitting with him was not his attorney but had merely been appointed by the court to stand by in order to answer any questions the appellant might have during trial. (Vol. 5 - pp. 38-39).

There were no objections from the appellant during the State's portion of the voir dire. (Vol. 5 - pp. 47-79).

As might be expected, there was quite a few objections from the State during the voir dire by the appellant. These generally occurred when the appellant strayed outside the boundaries of proper voir dire questioning. (e.g. "How many people here believe in God?"). Some of his questions were actually quite interesting and revealing. (e.g. "Describe the world in one word.") The appellant had to be reeled in when he started

discussing the facts of the case and started arguing his innocence (natural tendencies for pro se defendant's). For the most part, however, things went fairly smoothly and there were no objections by the appellant concerning any of the court's rulings concerning his voir dire. (Vol. 5 - pp. 80-89).

During the bench conference during which the sides discussed strikes for cause, the appellant move to strike venireperson number 8 for cause which was denied. Juror No. 8 had been brought to the bench and questioned individually. She was the president of the Harris County Sheriff's Office Citizens Police Academy and basically had been through police training but testified that nothing about that association would prevent her from being a fair juror. (Vol. 5 - pp 102-103).

The appellant also moved to strike venire person number 14. Number 14 was a police officer but testified he could be fair. The defense motion was denied. (Vol. 5 - pp 104-105). At one point, the appellant was able to get the trial court to reverse his granting one of the State's challenges for cause based on the venire person's statement that he would find it hard to sit in judgement. The appellant made the point that the person did not say he could not do it but only that it would be difficult. (Vol. 5 - pp 113-118).

Later the appellant objected to the trial court's granting of the State's motion to strike for cause venire person number 27. The issue with venire person number 27 was that her command of the English language was not great. Her position was that she did not want to judge someone if she was not 100 percent sure of what people are saying and

16

she is not sure she will understand everything that is going on in trial. She was then asked, if she did not know what was going on, did she think she could be a fair juror and she finally said "no". (This clearly was not because she held some bias but only because she did not think she could render a verdict based on the facts if she did not understand what all the facts were.) The State's motion to strike venire person for cause was granted and the appellant objected to that ruling. (Vol. 5 - pp 119-121).

The appellant also objected to venire person number 38 because he had said something during voir dire about the appellant being disrespectful to the court (around his not wanting to be called by his legal name). Venire person was called to the bench and he said he was not biased and that he could listen to the evidence and make a fair decision. The defense moved to strike him but that motion was denied. [10] (Vol. 5 - pp 125-126).

There were no objections to the jury panel once seated. [11] (Vol. 5 - pp 128-135).

<u>Preliminary Matters Taken up Prior to Testimony</u>

Prior to opening statements and outside the presence of the jury, it was confirmed that the appellant received the report involving the re-testing of the PCP in this case. He objected in that his order said that the test was to be done by the same person who did it the first time. In fact, a different person (within the same lab) conducted the retest. It was explained by the State that the lab was under the impression that the reason for the re-test was to make sure the first analyst did not make a mistake. Therefore another analyst was used. The appellant objected to the report in that it did not comply with the

---

10 Venire person number 38 actually made it on to the jury. (Vol. 5 - p. 128).

11 This would have waived any objections the appellant made to any strikes for cause. Tex. R. App. P. 33.1(a)(1).

17

trial court's order.  That objection was overruled. [12] (Vol. 6 - pp. 6-7).

The appellant then made an oral motion for a continuance stating he was "not ready for trial".  He repeated that he was not ready for trial and he did not have his witnesses, saying "I do not consent to going to trial today."   That motion was denied. (Vol. 6 - pp. 9-10).

### Opening Statement's

The State made its opening statement without objections.

The appellant then got up and was repeatedly stopped from making improper opening statements.  Ultimately he told the jury that he was going to try to prove that the police were lying about him being in possession of PCP.  (Vol. 6 - pp. 16-22).

### State's Case

The first witness called by the State was HPD Officer Jeffrey Sneed.  Officer Sneed testified that, on March 4, 2014, he was working an extra job at an apartment complex at 5050 Sunflower.  He had worked at this particular complex for five to six years and he described the complex as the "PCP Capital of Houston".  According to Officer Sneed, on the day in question, he was working with the same person he partners with at HPD.  (Vol. 6 - pp. 22-27).

According to Officer Sneed, on the day in question, he and his partner were sitting in his vehicle just watching for any suspicious activity.  At some point, he saw the appellant come through a pedestrian gate into the complex parking lot where he and his

---

12 It is not clear what the remedy would have been had the trial court sustained the appellant's objection.

18

partner were sitting. The officer testified that they observed the appellant cross the lot and start looking into various breeze ways as if he is looking for someone. According to Officer Sneed, he is fairly familiar with the residents at this complex and he did not recognize the appellant. (Vol. 6 - pp. 27-30).

Officer Sneed testified that after several minutes the appellant was approached by another man and the two walked into a breeze way. The officer assumed it was a drug transaction going on so he started to drive in that direction within several minutes the appellant was walking back toward the pedestrian gate and the officers got out of their car and approached the appellant.

According to Officer Sneed, when he got about ten feet away from the appellant, he smelled PCP. At that point, the officer asked the appellant if he lived at the complex and he responded that he did not. Officer Sneed testified that he noticed the appellant was holding something in his right hand and he asked the appellant if he was holding "a PCP stick". According to Officer Sneed, the appellant responded that he was and he opened his hand and showed it to the officer. The appellant was then arrested and, while he was being cuffed, a second "stick" was found in his other hand. According to Officer Sneed, the appellant told him that he "had some rough times at home and [he] was just trying to smoke them away" (Vol. 6 - pp. 31-36).

Officer Sneed identified State's Exhibit No. 1 as an envelope containing the two cigarettes taken off the appellant. The cigarettes themselves were identified and marked as State's Exhibit No. 2. (Vol. 6 - pp. 36-38).

19

On cross, Officer Sneed testified that it was around 6:35 p.m. when all of this occurred. According to the officer, he and his partner were in full uniform but using his personal vehicle. (Vol. 6 - pp. 40-42). The officer testified that he had arrested people with narcotics in their hand before, especially if they had just bought it. (Vol. 6 - p. 48).

Officer Sneed admitted that his offense report reflected that he had worked at this apartment complex for two years when he had testified it was more like five or six. He explained that the two years in the offense report referred to how long he had worked this complex with his partner. He personally had worked there longer. (Vol. 6 - pp. 49-50).

At some point, the appellant was questioning Officer Sneed with the use of a diagram and he asked that he be able to use some photographs. The State objected for failure to lay the proper predicate and the objection was sustained. The appellant then had the photographs marked as Defense Exhibits one through seven and asked the officer if they were accurate depictions of the scene. They were then admitted without objection. The pictures were then published to the jury. (Vol. 6 - pp. 57-59).

At some point Officer Sneed testified that he did not read the appellant his *Miranda* rights. His testimony is that it is only done when you intend to question someone and that is rare in a narcotics case. The appellant then stated "So you clearly violated my rights when you asked me questions after I was apprehended, is that safe to say? " That drew an objection and the jury was removed. (Vol. 6 - pp. 88-89).

The court then told the appellant that he needed to clear up the exact point that he went into custody because that is when his rights under *Miranda* attach. The appellant

20

agreed and the jury was brought back in. Officer Sneed then testified that the appellant was placed under arrest after he opened his hand and showed the officer the PCP cigarette. He added that the appellant was detained at the point that the officer smelled the PCP. The officer denied asking him any questions other than for identification purposes after he was placed under arrest. (Vol. 6 - pp. 91-97).

The next witness called by the State was HPD Officer Diego Morelli. He is the partner of Officer Jeffrey Sneed and was with him the night the appellant was arrested.

According to Officer Morelli, on March 4, 2014, he was the one who actually took possession of the PCP cigarettes taken off the appellant. According to Officer Morelli, he placed the PCP cigarettes in "these envelopes right here, and then I put the plastic bags in the yellow envelope, taped them up, put my initials, the date that I tagged the evidence, and then its dropped into a locked box." He testified that it was his name on the outside of the envelope marked as State's Exhibit 1 (the envelope containing the 2 PCP cigarettes). He also identified the cigarettes inside the envelope as the ones taken off the appellant. (Vol. 6 - pp. 103-105).

On cross, Officer Morelli was unable to say what the appellant's name was without referring to his offense report. The appellant then asked to approach the bench and argued that "there is somewhere in the law where they say if the accuser cannot identify the defendant by name - - " and then later - - "In the Brady motion you denied, yes, it is in there." The trial judge responded that "he identified you" so "let's move on." (Vol. 6 - pp. 109-110). [13]

13 It appears that the appellant is referring to a duty under *Brady* to let the defense know

21

At one point the appellant started asking Officer Morelli if he knew what the *Miranda* rights were. This was an issue to the appellant because he was asked if he lived in the apartment complex after he was under arrest and without having been *Mirandized.* The State objected and asked to approach and the jury was removed. (Vol. 6 - pp. 125-126).

The trial court pointed out to the appellant that he was questioning the officer about the very statement he made after he was placed under arrest. In short, what is the point? The appellant responded that "I'm just trying to clarify to let the jury know that they have proper procedures that they have to follow." The judge asked if there was some incriminating evidence that was obtained after he was arrested because he had not seen any indication that the State was trying to do that. His concern was that he did not want the jury getting confused about whether or not the *Miranda* rights should have been given when the State's case was complete at the point of his arrest. Ultimately, the trial court told the appellant "I don't think we need to get into all this *Miranda* rights business". The appellant responded he understood and the jury was returned. (Vol. 6 - pp. 127-132).

The appellant asked the officer if he ever had any complainants filed against him, to which he responded "Oh, yea." He testified they were all "non-sustained". The

---

if a witness failed to identify a particular defendant (e.g. failed to pick a defendant out of a photo spread). That is quite different from a witness who identifies a defendant but simply does not know his name (which is quite a common occurrence and the situation here). Unless a defendant states that he has not been indicted by his true name, it is assumed that his correct name is set forth in the indictment and he cannot deny it later as a defense. In short, it is not really something the State has to prove up by way of a witness. Tex. Code Crim. Proc. Ann. art. 26.07.

appellant then asked the officer what the complainants were about. The jury was then removed and the trial court advised the appellant he would not be allowed "to go down a bunch of rabbit trails". The appellant responded that he understood and that was why he put in for the Brady motion. "It specifically states that I am entitled to those type of things." (Vol. 6 - pp. 135-136). [14]

The trial court allowed the appellant to question Officer Morelli about the complaints while the jury was out. According to Officer Morelli, he had "use of force" complaints filed against him but they all were "non-sustained". He also had some "supervisory intervention complaints". He explained these occurred when someone did not like the way he was talking to them so they would complain and his supervisor would have to get involved. He described those situations "like a slap on the hand". The prosecutor then asked him if any of the complaints had anything to do with honesty and the officer responded "No, never." The trial court then asked him if he ever had a complaint made against him that affected a narcotics arrest and he answered "No". The appellant then told the trial court that he was through with that line of questioning. (Vol. 6 - pp. 140-142). The jury was then returned.

The next witness called by the State was Mariam Kane. Ms. Kane testified that she was a chemist for the City of Houston and she identified State Exhibit Number 1 (the envelope containing the PCP cigarettes) and 2 by her initials on the outside of the

---

14 Normally, the way these types of requests are handled is that a defendant will subpoena specific Internal Affair Division records. That entity will file an objection to the subpoena and the records are then reviewed *in camera* by the trial judge to determine if there is any exculpatory material and order that be turned over. A defendant cannot simply request a witness' personnel file through a Discovery Motion and expect a trial judge to turn those over.

envelope as well as the serial number and case number on both the envelope and the zip loc bag inside. [15] According to Ms. Kane, she got the exhibits from Central Evidence Receiving which is part of the HPD property room. The State then offered State Exhibit Numbers 1 and 2 into evidence. The appellant objected "due to the fact that there has been an improper chain of command due to the fact that the officer in question who actually found those narcotics did not sign off properly before he handed it over to HPD and then it was transferred back. There's been a tremendous change of hands." The objection was overruled and the exhibits were admitted. (Vol. 6 - pp. 160-164). [16]

Ms. Kane testified that, after testing the cigarettes, she came to the conclusion that they both contained PCP. Her lab report was admitted without objection as State Exhibit Number 3. According to Ms. Kane, the weight of the two cigarettes was 1.93 grams. (Vol. 6 - pp. 167-168).

On cross, Ms. Kane testified that the lab does not have the capability to separate the PCP out of the Cigarette. She can only test to see if there is a controlled substance in it. (Vol. 6 - pp. 170-172).

The appellant then asked Ms Kane if she was aware of the "400 dope cases that are being reopened through the Forensic Science Lab?" The State objected on relevance grounds and the jury was removed. Once the jury was out, Ms. Kane testified that she knew nothing about "400 dope cases" being reopened or overturned. The trial court then

---

15 It is critical for the purposes of this appeal that Ms. Kane testified that the two PCP cigarettes were in a single Ziploc bag.

16 Given the fact that Officer Morelli identified the cigarettes as the same ones taken off the appellant, his testimony did away with any chain of custody issues.

advised the appellant that he was going to instruct the jury to disregard that question. (Vol. 6 - pp. 174-175).

The trial court then asked the appellant if there was anything else they needed to discuss while the jury was out. The appellant responded that he had an exhibit and he then showed his motion to retest that was signed by an earlier judge to Ms. Kane and asked her if she had ever seen it and she said that she had not. She testified that when she got back from court on Monday, she was told that there was a request to retest the cigarettes but another chemist did it. The trial court advised the appellant that he would be allowed to go into that. (Vol. 6 - pp. 175-177).

The jury was returned and instructed to disregard the appellant's last question. The appellant then attempted to introduce Defense Exhibit Numbers 9 and 10. One of them was the second lab report done but the State objected to its admission since it was not Ms. Kane's report. The trial court sustained that objection. [17]The appellant then showed Ms. Kane Defense Exhibit 10 (presumably the Motion for Retesting). Ms. Kane testified that she did not know what it was. The State objected on hearsay grounds and that was sustained. (Vol. 6 - pp. 178-180).

Ms Kane testified that, when she got the cigarettes in question, they were packaged together in a single Ziploc bag. [18]She separated them into individual bags when

---

[17] It is not clear why the appellant wanted to introduce this exhibit since it supported the State's case.

[18] This is critical testimony because it is the possibility of contamination stemming from the two cigarettes being stored together which forms the basis of the appellant's argument for reversal based on the insufficiency of the evidence as to the weight of the PCP in the appellant's possession at the time of his arrest.

25

she got them and that was the way they were packaged in court. She had agreed earlier that, since PCP is a liquid, it can seep into anything it touches, even the bag that might contain the cigarettes. The exact exchange on this point was as follows:

Q. PCP, it sucks in, it's a fluid, it sucks in, it takes up everything, filters everything, whatever it touches, it's pretty much what?

A. Contaminated, yes.

Clearly, the purpose of separating the cigarettes into their own bags was to prevent this type of contamination. (Vol. 6 - pp. 180-183). [19]

After Ms. Kane's testimony, the State rested and the jury was removed. The trial court then went over with the appellant the ramifications (or lack thereof) if he testified or not. The appellant advised the trial court that he would not be testifying but he would like to recall Officer Sneed in order question him about any complaints that might have been filed against him. (Vol. 6 - pp. 184-186).

The Defense's Case

After a good bit of discussion, the trial court ruled that he would not let the appellant question Officer Sneed about any complaints filed against him since the appellant had no information that there actually were any. The jury was then returned and a very short direct examination by the appellant of Officer Jeffrey Sneed began. Nothing additional was developed. The appellant then rested and both sides closed. (Vol. 6 - pp. 187-201).

---

19 It will be the possibility that these cigarettes both tested positive for PCP because of contamination that will form the basis for the appellant's argument that the evidence was insufficient to convict him of the combined weight of the two cigarettes.

## Motion for Instructed Verdict

Once the jury was removed, the appellant moved for an instructed verdict. That motion was denied. (Vol. 6 - p. 203).

## The Jury Charge

As to the jury charged, the appellant objected to it on the grounds it was "biased" and there was "nothing in there that benefits me". When asked whether he had any requested instructions, he replied " Yes. I have the statements for search and seize, a Terry frisk, accusational burden." The appellant also stated "The most important motion that I put in, I'm denied of that" and "The fact that the motion that I put in for discovery was not done to the specifications of which the judge ordered." He also complained that the instructions "doesn't even state that I was even ready for trial" and that "I have no defense whatsoever". He further complained that "I've been denied access to my files throughout the trial" and "I've been granted 15 hours or more of law library time. I haven't received those hours." The appellant also complained that the charge had nothing about "me not consenting to this trial today." All of these requests were denied. (Vol. 6 - pp. 203-206).

## Closing Arguments

The appellant was repeatedly told to stay within a discussion of the evidence as presented from the witness stand during his closing (instead of using his closing to testify). Finally, the trial court admonished the jury to remember the evidence that they heard and understand that statements by the lawyers during their closings are not

themselves evidence.  (Vol. 6 - pp. 208-221).

During the State's closing, there were a number of objections by the appellant but none presented anything for appeal.  The one objection he should have made (and which had a chance to gain some traction on appeal), he did not.  During it's closing, the State argued, "He certainly never denied that he was in possession of those Phencyclidine cigarettes."  (Vol. 6 - p. 232).  This arguably was a comment on the appellant's failure to testify.  Unfortunately, the comment drew no objection and consequently any error was waived.

### The Verdict

After deliberations, the jury returned a verdict of "guilty" on the charge of Possession of a Controlled Substance weighing 1 - 4 grams.  (Vol. 6 - p. 235).

### Sentencing

Sentencing was held before the trial court.  The appellant plead "not true" to the enhancements and the State called two witnesses, Derrick Salo, the custodian of jail cards from the Harris County Jail, and Dimitri Payavla, a fingerprint expert.

Derrick Salo, a jail card custodian with the Harris County Jail, testified that State's Exhibit Number 4 was a business record involving the appellant, Marcus Deon Jackson.  It was admitted over objection (which failed to state any grounds).  There were no questions from the appellant.  (Vol. 7 - pp. 9-11).

The State next called Dimitry Payavla, a fingerprint examiner with the Harris County Sheriff's Department.  The appellant objected to this witness on the grounds that

he was not listed on the State's subpoena list.  The State responded that it had listed a fingerprint expert to be named later.  The appellant's objection was overruled.  (Vol. 7 - pp. 11-13).

Mr. Payavla testified that he took the fingerprints of the appellant in court and compared them to State Exhibit Numbers 5, 6, 7, 8, 9, 10 and 11.  According to Mr Payavla, he was able to determine that the prints on State Exhibit Numbers 5, 9, 10 and 11 came from the same source.  The appellant objected "None of those are listed on my enhancements."  That objection was overruled and  State Exhibit Numbers 5, 9, 10 and 11were admitted. (Vol. 7 - pp. 14-17).

Mr. Payavla's attention was directed to State Exhibit Number 4, a Business Record Affidavit attached to jail cards.  Mr. Payavla testified that the prints on the third page of State Exhibit Number 4 (referring to Cause No. 1001209) came from the appellant.  Mr. Payavla then testified that State Exhibit Number 6 contained the appellant's name and the Cause No. of 1001209.  (Vol. 7 - p. 19).

Mr. Payavla's attention was then directed to the fifth page of State Exhibit Number 4.  Mr. Payavla testified that the prints on the fifth page of State Exhibit Number 4 (referring to, among others, Cause No. 0914752, a Criminal Mischief) came from the appellant.  Mr. Payavla then testified that State Exhibit Number 7 contained the appellant's name and the Cause No. of 914572.  (Vol. 7 - pp. 19-21).

Mr. Payavla's attention was then directed to the seventh page of State Exhibit Number 4.  Mr. Payavla testified that the prints on the seventh page of State Exhibit

29

Number 4 (referring to Cause No. 1188908, a PCS case) came from the appellant. Mr. Payavla then testified that State Exhibit Number 8 contained the appellant's name and the Cause No. of 1188908. The State then offered State Exhibit Numbers 6, 7 and 8 into evidence. Those were admitted over objection. (Vol. 7 - pp. 21-24). [20] [21]

After Mr. Payavla's testimony, the State rested. The appellant then called himself to the stand. (Vol. 7 - p. 27).

On cross, the appellant admitted to his prior convictions, including the two used for enhancement purposes. (Vol. 7 - pp. 34-35). He refused to admit that he was in possession of the two PCP cigarettes for which he was charged. (Vol. 7 - pp. 40-41).

At the end of his testimony, the appellant offered several exhibits that were admitted as Bills of Exception. Defense Exhibit Number 9 was the lab report from the retesting of the cigarettes. Defense Exhibit Number 10 is described in the Record as a Motion to View Evidence (while the appellant described it as a forensic report). Defense Exhibit Number 11 was the Order granting him 15 hours per week of library time at the jail. (Vol. 7 - pp. 52-53). Defense Exhibit Number 12 was the Request for 404(b) notice. Defense Exhibit Number 13 was Law Library Time Sheets, Defense Exhibit Number 14 was the appellant's Discovery/Brady Motion, Defense Exhibit Number 15 was the first lab report (already in evidence) and Defense Exhibit Number 16 was the Discovery Order entered. (Vol. 7 - pp. 52-53).

---

[20] The convictions used for enhancement purposes were represented by State Exhibit Numbers 6 and 8.

[21] It should be noted that, when the appellant took the stand in punishment, he admitted to all of his priors, including those that constituted the enhancement paragraphs. Any possible error involved in the admission of these exhibits was thereby waived.

After both sides rested and closed the appellant basically asked for leniency and rehab. The State asked for 45 years. After finding that the enhancement paragraphs were "true", the trial court sentenced the appellant to 35 years in the Institutional Division of the Texas Department of Criminal Justice. (Vol. 7 - pp. 61-62).

## SOLE ISSUE PRESENTED (Restated)

WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE
APPELLANT'S CONVICTION FOR POSSESSION OF
PCP IN AND AMOUNT OF ONE TO FOUR GRAMS?

## SUMMARY OF THE ARGUMENT

Given the high risk that anything placed in the single Ziplock baggie was going to test positive for PCP after spending 49 days in a small airtight container, no rational trier of fact could have found that the weight of the PCP possessed by the appellant at the time of his arrest was over 1 gram. That being the case, the appellant's judgement and sentence should be reversed for the insufficiency of the evidence and a judgment of acquittal should be entered.

## ARGUMENT

The question in this case is not whether there was sufficient evidence to support a finding that the appellant possessed PCP. The question is whether that evidence was sufficient to support a finding that the amount was over one gram. The issue arises because of the notion of contamination.

31

When considering a challenge to the sufficiency of the evidence, the reviewing court is to examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality op .)

The evidence in this case was that two cigarettes were taken off the appellant at the time of the appellant's arrest on March 4, 2014. There is nothing in the record to suggest any type of field test was conducted on those cigarettes at the time. Those cigarettes were placed in a single Ziploc baggie and remained together in that small airtight container until that baggie was opened by Miriam Kane for testing on April 21, 2014 (49 days later).

The City of Houston Chemist, Mariam Kane, testified that PCP is a liquid that has the potential to seep into (i.e. contaminate) anything with which it comes into contact. HPD Officer Sneed testified that he could smell PCP coming off the appellant from 10 feet away. That means that PCP readily becomes a gas that travels through the air. Given all of this testimony, is there any doubt that anything sealed with PCP in a small baggie for 49 days is going to absorb some of that PCP. (Certainly Chemist Kane separated them when she had the chance for some reason.)

Given the facts of this case and the high probability of contamination, how then could any rational juror find beyond a reasonable doubt that both of those cigarettes had

32

PCP on them when they were taken from the appellant. The most that could be deduced beyond a reasonable doubt was that possibly both did but, with any degree of certainty, only one did.

There was no evidence on the weight of each individual cigarette (presumably they were about the same size). The combined weight of these cigarettes was only 1.93 grams. Even if it were not true that the bulk of the weight involved in "dipped cigarettes" is the "adulterants" and not the PCP itself, once one of the cigarettes here is thrown out as the likely product of contamination, the only thing the State proved beyond a reasonable doubt, was that the appellant possessed PCP in some amount under 1 gram.

CONCLUSION

Given the high risk that anything placed in the single Ziplock baggie was going to test positive for PCP after spending 49 days in such a small airtight container, no rational trier of fact could have found beyond a reasonable doubt that both cigarettes contained PCP or that the weight of the PCP possessed by the appellant at the time of his arrest was over 1 gram. That being the case, the appellant's judgement and sentence should be reversed for the insufficiency of the evidence and a judgment of acquittal should be entered.

PRAYER

It is requested that the Court find that the evidence here was insufficient to support the appellant's conviction for possession of PCP of an amount between 1 to 4 grams and that it reverse the judgement and sentence and enter a judgment of acquittal.

Respectfully submitted,


___/s/ Kyle B. Johnson_____

Kyle B. Johnson
SBN: 10763570
The Kiam Building
929 Preston, Suite 200
Houston, Texas 77002
Tel: (713) 223-4100
Fax: (713) 224-2889
Email: kbjohnsonlaw@sbcglobal.net


## CERTIFICATE OF COMPLIANCE

I certify that this brief is in compliance with Texas R. App. Proc. Rule 9.4(i)(3) in that it contains 7308 words.


___/s/ Kyle B. Johnson_____
Kyle B. Johnson


## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record on this 28th day of June, 2015, to wit:

Alan Curry
Appellate Division
Harris County District Attorney's Office
1201 Franklin
Houston, Texas 77002


___/s/ Kyle B. Johnson_____
Kyle B. Johnson